Filed 4/20/22  P. v. Washington CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C092937 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F04720) |
| v. | |
| JAMES WASHINGTON, | |
| Defendant and Appellant. | |

On May 21, 2010, a jury found defendant James Washington guilty of first degree felony murder (Pen. Code, § 187, subd. (a)) (statutory section citations that follow are to the Penal Code), second degree robbery (§ 211), and torture (§ 206).  The jury also found true the special circumstances allegations that defendant used a deadly weapon in connection with the murder and torture (§ 12022, subd. (b)(1)) and that the murder happened during the course of a robbery (§ 190.2, subd. (a)(17)).

In pertinent part, defendant received a sentence of life without the possibility of parole for the murder, plus one year.  We affirmed this judgment on appeal.  (*People v. Washington* (Jan. 3, 2013, C065636) [nonpub. opn.] (*Washington*).)

1

We have granted defendant's request to incorporate the record of this prior appeal by reference here.

Defendant, acting in propria persona, petitioned the trial court for resentencing based on changes to the felony-murder rule under recently enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437). (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019.) The trial court summarily denied his petition before appointing him counsel after finding, in pertinent part, that given the jury's true finding on the robbery-murder special circumstance under section 190.2, subdivision (a)(17), defendant was not entitled to relief.

On appeal, defendant argues that because his petition complied with the statutory requirements, he was entitled to appointment of counsel, briefing, and a hearing on the merits of his petition before the trial court's denial. He further argues that even if the record of conviction could be properly considered in the trial court's prima facie determination, the jury's true finding on the robbery-murder special circumstance cannot preclude his petition for relief because that finding predated the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

In accordance with the Supreme Court's recent decision in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) and the legislature's codification of that decision in Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) (Stats. 2021, ch. 551, §§ 1-2.), we conclude the trial court erred in summarily denying defendant's petition without the benefit of the appointment of counsel and briefing. However, we find any error was harmless under the circumstances of this case, and accordingly, we affirm.

FACTS AND HISTORY OF THE PROCEEDINGS

A. The Underlying Robbery-Murder

We take the facts from the unpublished opinion we issued in 2013 affirming defendant's convictions in *Washington*:

"During the early morning hours of June 7, 2008, defendant and Abella were hanging out together at an apartment complex in Rancho Cordova where Abella's mother lived. At the time, defendant was dating Abella's sister, E.G, who was also present.

"At approximately 2:40 a.m., defendant and Abella walked to a nearby 7-Eleven store. The events that occurred thereafter were captured in large part on surveillance cameras mounted at the 7-Eleven and at an adjacent check-cashing store.

"At approximately 2:50 a.m., defendant and Abella left the 7-Eleven and approached 50-year-old William Deer, who was sitting on a curb outside the check-cashing store drinking coffee he had just purchased at the 7-Eleven. Deer was both mentally and physically handicapped due to a motorcycle accident more than 20 years earlier.

"Earlier that evening, Deer's mother had dropped him off at a bus stop in Sacramento so he could visit friends in Rancho Cordova. At the time, Deer wore a fanny pack around his waist in which he carried various personal items, including a cell phone charger, a toothbrush, cigarettes, and money. He also carried with him a cell phone. Deer was wearing the fanny pack in the 7-Eleven approximately 30 minutes before he was approached by defendant and Abella.

"What transpired during the initial encounter with Deer is not altogether clear. However, what is clear is that, at some point, defendant and Abella beat, kicked and stomped on Deer and then ran from the scene.

"Approximately 30 minutes later, defendant returned to the area with E.G. By that time, defendant had changed his shirt. The two approached Deer, who was still lying

3

where defendant and Abella had left him following the beating. E.G. could see that Deer was hurt but he was still alive. Defendant and E.G. departed.

"Seven minutes later, defendant and Abella returned to where they had left Deer. Less than a minute later, they again ran from the scene.

"Defendant and Abella returned a third time approximately 30 minutes later, this time with a BB gun. They shot Deer 19 times in the face and abdomen and then fled the scene.

"Police were eventually dispatched to the 7-Eleven and found Deer still alive. They did not find a fanny pack or cell phone in the area; nor did they find any identification for the victim. Deer was taken to the hospital, where he later died. The cause of death was determined to be multiple blunt force head injuries plus multiple BB pellet injuries.

"Five days later, defendant and Abella were arrested. They were charged with murder, robbery and torture and were tried separately. Defendant was ultimately convicted and sentenced as previously indicated." (*Washington, supra*, C065636.)

B. The Legislation

Senate Bill 1437, which became effective on January 1, 2019, was enacted "to amend the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation accomplished this by amending sections 188 and 189 and adding section 1170.95 to the Penal Code.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e)

4

now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial . . . . [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."  (Former § 1170.95, subd. (a).)

At the time that the trial court denied defendant's petition, section 1170.95 provided, "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . .  If the petitioner makes a prima facie showing that he or she is

5

entitled to relief, the court shall issue an order to show cause." (Former § 1170.95, subd. (c).)[1]

C. The section 1170.95 Proceedings

On September 20, 2020, defendant filed a petition in propria persona requesting resentencing under section 1170.95. Defendant did not use a form petition, instead averring in pertinent part and in paragraph form, that he had been charged and convicted of first degree murder under either felony murder or murder under the natural and probable consequences doctrine. However, because of changes brought about by Senate Bill 1437 to sections 188 and 189, defendant could not now be convicted of first or second degree murder. Finally, defendant requested appointment of counsel.

On October 14, 2020, the trial court summarily denied defendant's petition in an ex parte written order. This order noted the court's review of defendant's file, that defendant's jury had been instructed with special circumstances as defined in CALCRIM No. 703 (the substance of which the court recounted), that the jury had determined this special circumstance to be true, and finally, that defendant had also committed robbery and torture and that the jury had found the personal use of a BB gun enhancement true. Accordingly, the court concluded, "It is abundantly clear that the defendant could still be prosecuted for murder under current murder theories including as the actual killer, direct aiding and abetting, or under current felony murder law." Therefore, the court denied relief, citing various authorities including *People v. Allison* (2020) 55 Cal.App.5th 449 (*Allison*). Defendant timely appealed.

---

[1] Only some of the amendments made by Senate Bill 775 to section 1170.95 are relevant to our analysis, and thus, we will only highlight those changes within our analysis *infra*.

6

Defendant argues he is entitled to reversal and remand because: (1) his petition complied with the statutory requirements for a prima facie showing, thus entitling him to appointment of counsel, briefing, and a hearing on the merits of his petition before the trial court's denial, and (2) the robbery-murder special circumstance does not preclude his eligibility because the definitions of "major participant" and "reckless indifference to human life" were clarified by our Supreme Court after the jury made that finding in *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522. Thus, defendant reasons the special circumstance findings from his trial are potentially invalid and should not be given preclusive effect.

Taking these issues in order, the California Supreme Court recently decided a defendant filing a facially sufficient petition for relief under section 1170.95, subdivision (b) is entitled to the appointment of counsel (if requested) and briefing prior to the trial court's determination of whether the defendant has made a prima facie showing that he or she is entitled to relief under section 1170.95, subdivision (c). (*Lewis, supra*, 11 Cal.5th at p. 957.) During the briefing in this appeal, but not acknowledged by the parties, the Governor approved Senate Bill 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, §§ 1-2.) In pertinent part, this legislation, which took effect on January 1, 2022, amended section 1170.95 to "[c]odif[y] the holdings of *People v. Lewis*[, *supra*]11 Cal.5th [at pp.] 961-970, regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case." (Cal. Const. art. IV, § 8; Stats. 2021, ch. 551, § 1.) Thus, it appears the trial court erred in summarily denying defendant's petition without appointing counsel and allowing the matter to be briefed in accordance with section 1170.95, subdivision (c). (*Lewis*, at p. 957.)

We nonetheless, find any error in failing to appoint counsel and allow briefing was harmless under *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis, supra*, 11 Cal.5th at

7

pp. 972-974.) There is no question that the trial court was entitled to review the record of conviction when making its section 1170.95 subdivision (c) determination. (*Lewis*, at pp. 970-971.) A review of that record confirms defendant's jury was indeed instructed with CALCRIM No. 703, which required the jury to make findings mirroring the current version of section 189, subdivision (e). (See CALCRIM No. 703; § 189, subd. (e).) Given that special circumstance instruction and jury finding, there is nothing defendant's attorney could have said that would eliminate his ineligibility for relief as a matter of law. (See *Allison, supra*, 55 Cal.App.5th at p. 457, [felony-murder special circumstance (§ 190.2, subd. (a)(17)) and new requirements for felony murder (§ 189, subd. (e)) require the same findings, thus showing a defendant with a felony-murder special circumstance "could still be convicted of felony murder" precluding relief], review denied Dec. 23, 2020, S265450, italics omitted.) Therefore, even though the court acted improperly when it summarily denied defendant's petition without counsel and briefing, the disqualifying information would have been submitted with that briefing and would still properly disqualify defendant from relief as a matter of law.

As the Supreme Court recently explained, "[w]hile the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility

8

determination adverse to the petitioner." ' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 971.)

Defendant argues we cannot find the trial court's error harmless because subsequent developments in the law have placed the continuing validity of the section 190.2, subdivision (a)(17) finding into question for purposes of the section 1170.95 inquiry. The Attorney General disagrees.

Whether a true felony murder special circumstance finding under section 190.2, subdivision (a)(17) should preclude a defendant from making a prima facie showing of entitlement to relief if that finding predated the Supreme Court's decisions in *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522 is an issue that has been the subject of great debate and is presently pending before the California Supreme Court. (See *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606.) Until we receive further guidance from the California Supreme Court, we find *Galvan* and *Allison* more persuasive on this issue than the cases to the contrary. (Compare *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284 (*Galvan*); *Allison, supra*, 55 Cal.App.5th 449, [enhancement disqualifying responding to *York*], review denied; *People v. Jones* (2020) 56 Cal.App.5th 474, review granted Jan. 27, 2021, S265854 [following *Allison*]; *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted Jan. 13, 2021, S265918 [following *Allison*]; *People v. Murillo* (2020) 54 Cal.App.5th 160, review granted Nov. 18, 2020, S264978; *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted Oct. 14, 2020, S264033; with *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted Jul. 22, 2020 S262835 [enhancement not disqualifying]; *People v. York* (2020) 54 Cal.App.5th 250, review granted Nov. 18, 2020, S264954 [following *Torres* and criticizing *Galvan*].)

In light of this, we do not accept defendant's attempts to impugn the preclusive effect of those findings. As explained in *Allison*, "Nothing in the language of section

9

1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding. In particular, subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes* to sections 188 and 189, not *because a prior fact finder got the facts wrong*. The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison, supra*, 55 Cal.App.5th at p. 461.) Otherwise, "every convicted murderer who could make a prima facie showing (whatever that might be) that the prior findings were factually incorrect would be entitled to a bench trial de novo on those findings." (*Ibid*.)

Because the true findings on the section 190.2, subdivision (a)(17) enhancements preclude defendant from showing that he could not now be convicted of first degree felony murder following the changes brought about by Assembly Bill 1437, the trial court did not err in determining he was ineligible for relief.

DISPOSITION

The judgment is affirmed.

_____
HULL, J.

We concur:

_____
RAYE, P. J.

_____
ROBIE, J.

10